FITZHUGH et al. v. REID.

(District Court, E. D. Arkansas, W. D.   June 26, 1918.)

1. REMOVAL OF CAUSES ⬗102—VENUE—REMAND OF CAUSE.
    As the venue in the federal court, on removal from a state court on the ground of diversity of citizenship, is not jurisdictional in the sense that it cannot be waived, the court may not remand the cause of its own motion because neither of the parties is a citizen of the state and district; no objections to the removal having been made.

2. PROCESS ⬗114—SERVICE—PRIVILEGE OF OFFICER.
    Where federal industrial mediator went from California, where he was engaged in his duties, to Hot Springs, Ark., to secure treatment for illness incurred in course of duties, and while at Hot Springs completed findings in California matter and there received instructions' to go to Texas and act in his official capacity, which he did, he was not privileged from service of process, issuing from the Arkansas court, while at Hot Springs.

3. PROCESS ⬗168—ABUSE—INSTITUTION OF TRANSITORY ACTION.
    Where federal industrial mediator, resident of Colorado, voluntarily went from California to Hot Springs, Ark., to secure treatment for illness, and there was served with process from Arkansas court by plaintiffs, guilty of no fraud in inducing him to go to Arkansas, though all witnesses were residents of Colorado, Wyoming, and California, plaintiff was properly sued in Arkansas, action being transitory, and it was not abuse of process.

4. PROCESS ⬗168—ABUSE—TRICKERY OR FRAUD.
    Party ordinarily has right to institute and maintain transitory action in any court of competent jurisdiction where personal service can be had on defendant whereby court obtains jurisdiction of person; but if, by sham transfers or trickery, to force payment of unjust claim, suit is instituted in court whose jurisdiction could not have been invoked except by fraud, institution constitutes abuse of process.

In Equity.   Suit by William F. Fitzhugh and others against Verner Z. Reid.   On motion to quash service of process.   Motion overruled, and defendant granted time within which to file answer.

Moore, Smith, Moore & Trieber, of Little Rock, Ark., for the plaintiffs.

Tyson S. Dines, of Denver, Colo., and W. H. Martin, of Hot Springs, Ark., for defendant.

TRIEBER, District Judge.   [1] The defendant while in Hot Springs, Ark., was served with a summons in the above-entitled cause, issued out of the chancery court of Garland county, state of Arkansas. The action was removed to this court upon the petition of the defendant, upon the ground of diversity of citizenship.   Although neither of the parties to the action is a citizen of this state and district, no objections to the removal have been made by the plaintiffs; in fact, the plaintiffs·expressly consented to the removal.   As the venue is not jurisdictional, in the sense that it cannot be waived, there being a diversity of citizenship, the court may not remand the cause of its own motion.   In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 52 L. Ed. 904, 14 Ann. Cas. 1164; Male v. Atchison, etc., R. R., 240 U. S. 97, 36 Sup. Ct. 351, 60 L. Ed. 544.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The motion to quash the service of process sets up a large number of grounds, but they have been properly summarized by counsel for the defendant in his brief, under two general headings: First. That the defendant was a public officer of the United States, and as such was immune from service of civil process at the time he was served with the summons in this cause, at Hot Springs, in the state of Arkansas. Second. That the advantages which the plaintiffs seek to gain in selecting a court in the state of Arkansas, which is an inconvenient geographical place, is unconscionable, and constitutes an abuse of the process of the court. The motion was verified by the defendant, and was heard on the motion and the affidavit of the defendant's secretary; the plaintiffs introducing no evidence.

1. The official position of the defendant, it is alleged in the motion, is that of a mediator in disputes between employers and employés, appointed under direct authorization of the President of the United States; that at the time he was served with process he was sojourning at Hot Springs, Ark., for a few days, under treatment of physicians, in an attempt to obtain relief from sickness incurred while in the service of the United States, during the course of the arduous duties performed by him, in connection with his office, in the state of California; that on the 15th day of December, 1917, one day after he had been served with process, he was directed by the Secretary of Labor to go to the city of Houston, in the state of Texas, to effect a settlement of a dispute in Texas and Louisiana between the employers and employés in the oil fields of these states, and he left Hot Springs for Houston, Tex., on December 16, 1917; that he would not have been in the state of Arkansas at the time he was served with process but for the duties devolving upon him as such mediator.

From the affidavit of the defendant's secretary it appears that the defendant left Los Angeles, Cal., on December 1st, and arrived in Hot Springs on December 5th, and that while at Hot Springs he was busily engaged in the completion of matters which had been left unfinished in connection with the official work he had been engaged in in California, and that on the 13th day of December he received a telegram from the president of the State Federation of Labor of Texas, requesting him to come to Houston, Tex., and act in his official capacity and effect a settlement of labor disputes in the oil fields of Texas; that he was directed by the Department of Labor to proceed to Houston on the 15th of December; and that he left Hot Springs for Houston on the 16th of December.

It is conceded that the action, being for an accounting and to recover sums of money alleged to be due to the plaintiffs from the defendant, on account of breaches of contracts and alleged fraudulent acts, is transitory.

[2] It will be assumed, without deciding, that the official position of the defendant, mediator in labor disputes, entitles him to the same privilege of exemption from service in a civil action, while away from his home in the performance of his official duties, as litigants and witnesses in foreign courts, legislators, or judges. It has been so held in actions against judges (Lyell v. Goodwin, 4 McLean, 29 Fed. Cas. No.

8,616; Commonwealth v. Ronald, 4 Call. [Va.] 97), and by implication in Re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55. But see Mason v. Connors (C. C.) 129 Fed. 831, where it was held that a superintendent of construction of a federal building, in a state other than that of his residence, was not entitled to exemption from service of process in the foreign state, where he was employed as such superintendent. The court said:

"The employment was merely his voluntary private business, which took him, but did not compel him to go, there."

But all the authorities, whether the privilege is claimed by litigants, witnesses, or attorneys from foreign states, when employed in an action pending in court, members of legislative bodies or constitutional conventions, and judges, hold that this privilege extends only when the parties are in actual attendance on the courts, legislative bodies, or in the performance of their official duties, and for a reasonable period of time for coming and going. This is the most liberal construction that can be found in any of the authorities.

As it is not claimed that the defendant, while in Hot Springs, was engaged in the performance of official duties, unless the preparation of his report of his official acts, while in California, in the performance of such an official duty, entitles him to the privilege claimed, the contention that he was at that time on his way to the state of Texas to perform his duties there cannot be sustained.

A case very much in point is Gratz v. Wilson, 6 N. J. Law, 419. The defendant was a justice of the Supreme Court of the United States, and he and the plaintiff were both citizens of the state of Pennsylvania. While the defendant was in the state of New Jersey, he was arrested under process in a civil action, and held to bail. He had then been appointed to hold the Circuit Court of the United States in the state of Georgia, which was to he held 30 days subsequent to the time of his arrest. The claim of privilege was denied by the court. Chief Justice Kinsey, who delivered the opinion of the court, said:

"Privilege is ever a matter stricti juris, and ought not, particularly when of so odious a character, to be extended by implication."

Justice Kirkpatrick, in a separate concurring opinion, said:

"As to cases of peers, members of Legislature, etc., they stand upon ground altogether different, and it is sufficient to say this is not a case of that kind. Arguments have been laid before us, drawn from general views of [public] policy, public utility and convenience; but these cannot serve as the foundation of an introduction by the judiciary of a new rule. Where but little doubt remains, suggestions of this kind are proper; * * * but they will not authorize us to discharge this defendant unless he has a right to be discharged by law."

In the opinion of the court, this claim is untenable. The defendant left Los Angeles, in the state of California, on December 1st, direct for Hot Springs, Ark. At that time he had no orders to proceed to Texas, or to perform any duties in that state. He received no orders to go there until the day after this suit had been instituted and process served on him. The most that can be claimed for him is that he ex-

pected to be sent there at some time in the future. He was not therefore in Hot Springs for the purpose of performing official duties, nor was he on the way to a place to perform official duties, nor returning from such a place.

The fact that he required rest and recuperation from the arduous duties which he had performed in the state of California, and to obtain them induced him to go to Hot Springs, a health resort, clearly does not entitle him to claim that privilege, and no authority has been cited to the court, nor has the court been able to find any, which would sustain such a claim. This also applies to the claim that he was preparing his report of what had been done by him in California. The only authority cited to the court, and on which counsel rely, is Miner v. Markham (C. C.) 28 Fed. 387; but the facts in that case are clearly inapplicable to those in the instant case. In that case defendant was a member of Congress from the state of California. At the time of the service of process upon him, he was on his way to the city of Washington for the purpose of attending a session of the House of Representatives, as a member thereof, and was temporarily in the city of Milwaukee. He left Los Angeles, accompanied by his wife and four children, intending to proceed to Washington, and there secure a suitable place of residence for himself and family during the session, and in time to arrange for and settle his family and household affairs there, prior to the date of the commencement of the session; that during his journey several of his children were ill, and by reason thereof he was obliged to stop at several places on his way to Washington: that, by reason of such illness, he was being detained in Milwaukee, at the residence of his brother, and while there was served with the summons. He further stated in his affidavit that he started from his residence in Los Angeles to attend the session of Congress only a reasonable length of time before the commencement of the session, and such as he considered proper and necessary under all the circumstances connected with the discharge of his duties, as a Representative in Congress, and was proceeding on his way to attend the session without any unreasonable and unnecessary delay. The court held that, upon these facts he was exempt from service of process. The court said:

"To entitle the defendant to the privilege here invoked, he must have been in good faith on his way to the seat of government to enter upon the discharge of his public duties; that must have been the primary object of his journey. He must have left his residence in California with the intent of then going to Washington to take his seat in the Congress to which he was elected, and the time taken for the journey must have been reasonable. He had a right, without forfeiture of his privilege, to set out from his residence at such time before the session should open as would enable him conveniently to establish his quarters, and settle his family and household affairs at the Capital, and also, I think, to enable him to inform himself as a new member regarding pending legislation, so that he might enter advisedly upon the discharge of his duties. A slight deviation from the usual route for rest, convenience, or because of family sickness, ought not to cause a loss of his privilege, if such deviation was but an incident to the principal journey. Nor ought the duration of the privilege to be strictly measured by the exact number of days, with the present facilities for travel required for a journey from his residence in California to Washington. At the same time, his privilege could

not and ought not to avail him if the deviation was equivalent to an abandonment of the original journey for purposes of pleasure or family visiting. If, when he left his home in California, his intention was to make a journey, not to Washington but to Milwaukee, there to spend an indefinite time visiting relatives, and then go from Milwaukee to Washington after such prearranged delay at the former place as would still enable him to arrive at the Capital in reasonable time to enter upon his public duties, so that it might be fairly said that the object of his journey at the time he set out upon it was not then to go to the Capital, but elsewhere, it is clear that while in Milwaukee he could not assert the constitutional privilege of exemption from arrest or service of process."

If the judge of this court should proceed to the state of Colorado, by reason of an assignment to preside in the District Court there, he would, no doubt, be exempt from service of process in a civil action, while thus engaged in the state of Colorado, and while going to and returning from there to his home. But could he claim that privilege if he went to Colorado for rest and recuperation from his arduous official labors, even if he expects that, while in that state, he would be assigned to preside in the court of that state, or some other state? Clearly not. Nor would he be in the performance of his official duties, if while recuperating in Colorado he should prepare opinions in causes which had been submitted to him, while presiding in his own court in this state, and by him taken under advisement.

Counsel for defendant, in their brief, say:

"The court will take judicial notice of the fact that one of the common and direct lines of travel from Los Angeles, Cal., to the oil fields of Texas and Louisiana, would take the defendant eastward to Kansas City, and St. Louis, and thence southward through Arkansas to the oil fields in question. Defendant took this route, stopping off at Hot Springs, Ark., intending to recuperate there from his recent arduous duties, and while there complete his findings arising out of the California investigation."

If the court is permitted to take judicial notice of the lines of travel from Los Angeles, Cal., to the oil fields of Texas, which is seriously doubted, it would have to take notice of the fact that the shortest and most direct route is by way of El Paso, Tex. That would also be the most direct route to reach Arkansas. To go to Hot Springs from Los Angeles by the shortest route he would have to traverse the entire state of Texas.

[3, 4] 2. Is the institution of this action, which is conceded to be transitory, such an abuse of the process of the court as requires it to be set aside?

The grounds for this contention, as set out in the motion, are briefly stated as follows:

"That the plaintiffs are citizens and residents of the state of California, within which state the defendant had been for a period of several weeks preceding the said 14th day of December, 1917; that plaintiffs subjected him to espionage, while in the discharge of his public duties in that state, and followed and spied upon and sued him in the Arkansas court, for the purpose of oppressing and annoying him and interfering with the discharge of his official duties, and put him to great expense and inconvenience, although he could have been sued and served with process in the state of Colorado where he resided; that the property rights and interests involved in the litigation are not and have never been situated within the state of Arkansas; that the

contracts out of which the alleged controversy grows were made and executed within the state of Colorado; that all the witnesses for both parties reside in the states of Colorado, California, and Wyoming, and none in the state of Arkansas; that all the books, papers, and records are in the city of Denver, Colo.; that the transactions that are referred to in the complaint run over a long period of years, involving many complicated questions of law, and will compel him to go to great and unnecessary expense in bringing witnesses and attorneys to the state of Arkansas; that the object of bringing the suit in Arkansas is an oppressive, unjust, and fraudulent use of the process of the court, for the purpose of harassing and annoying the defendant and causing him great expense unnecessarily."

It will be noticed that no claim is made that the defendant was induced by any act of the plaintiffs to go to Hot Springs, Ark. There is no pretense that plaintiffs were guilty of any fraud in obtaining the service of process; there was no misrepresentation by the plaintiffs, express or implied, in regard to anything connected with the defendant's going to or staying at Hot Springs; it was his own voluntary act, which took him there. There is therefore no ground for a claim of fraud practiced upon him by the plaintiffs. In Jaster v. Currie, 198 U. S. 144, 147, 25 Sup. Ct. 614, 615 [49 L. Ed. 988], Mr. Justice Holmes, speaking for the court in a case in which a claim that the defendant had been fraudulently induced by the plaintiff to go to a foreign state, for the purpose of having him served with process there, said:

"It will be observed that there was no misrepresentation, express or implied, with regard to anything, even the motives of the plaintiff. The parties were at arm's length. The plaintiff did not say or imply that he had one motive rather than another. He simply did a lawful act by all the powers enabling him to do it, and that was all. Therefore the word 'fraud' may be discarded as inappropriate."

The action being transitory, a party has, ordinarily, the right to institute and maintain an action against a defendant in any court of competent jurisdiction where personal service can be had on him, whereby the court obtains jurisdiction of his person. The fact that it may be inconvenient for the defendant to make his defense in that tribunal, and that is practically all the allegations in the motion amount to, is no cause for abatement of the action, or quashing the service of the summons. In a number of states there is only one national court, and that may be several hundred miles distant from the place of the residence of the defendant; yet, can it be successfully contended that by reason of this inconvenience caused to the defendant, and by reason of the fact that his witnesses may also reside in the place of his residence, the service of summons should be quashed? At one time there was but one national court in the large state of Texas, and that at a time when there were no railroads in that state. Great as the inconvenience must have been to be sued in such a court, when living several hundred miles from the place where the court was held, he could not object to the jurisdiction of that court, regardless of the inconvenience it may cause him.

The fact that the testimony will have to be taken in the states of Colorado, Wyoming, and California, does not change this rule. The acts of Congress and Equity Rule 47 (198 Fed. xxxi, 115 C. C. A.

xxxi) expressly provide that the testimony of witnesses residing out of the district, and more than 100 miles from the place where the court is held, may be taken by deposition. This does away with the necessity of bringing witnesses, books, and documents to the trial court. Even if the suit were brought in the state of Colorado, it would be necessary, according to the allegations in the motion, to have the testimony of witnesses residing in the states of Wyoming and California.

The principal cases upon which counsel rely are Dishaw v. Wadleigh, 15 App. Div. 205, 44 N. Y. Supp. 207, and Smith v. Weeks, 60 Wis. 94, 18 N. W. 778. But neither of these cases is in point. In the Dishaw Case, which was an action for malicious prosecution by a civil proceeding, the facts were that the defendant, an attorney at law, residing at Potsdam, N. Y., entered into an arrangement with one Woodward, residing at Gouverneur, N. Y., in the same county, by which the defendant was to procure accounts to be assigned to Woodward, for the purpose of having suits instituted by Woodward in the justice's court at Gouverneur. The accounts were for small amounts, and the evidence established that the object of having these suits brought in Gouverneur, which was 60 miles from Potsdam, and to reach which it was necessary to start the day before, was to compel the payment of these small claims, regardless of whether they were just or not, in order to avoid the expense and inconvenience of going to Gouverneur, which would exceed the amounts involved. To add to the oppression of the party sued, the defendant would cause subpœnas to be served on him at the same time the summons was issued. It also appeared that the plaintiff, having failed to appear in obedience to the subpœna, was attached, and a fine of $1 and $15.20 costs were imposed on him, and execution against his person issued for the fine and costs. Upon these facts, the court held that the action for malicious prosecution would lie. The correctness of this decision cannot be assailed. For a similar action an attorney was held to be properly disbarred in Wernimont v. State, 101 Ark. 210, 142 S. W. 194, Ann. Cas. 1913D, 1156.

In Smith v. Weeks, the action was against a sheriff for abuse of process, which consisted of arresting a locomotive engineer just as he was preparing to go out on a run with his locomotive. The evidence showed that the sheriff had the writ in his pocket and kept watch over the defendant for several hours prior to the time he made the arrest, and that he delayed serving it in order to make the arrest as inconvenient as possible for the accused.

No allegations of that nature are found in defendant's motion. There can be no doubt that if by sham transfers, or trickery, for the purpose of forcing the payment or settlement of an unjust claim, a suit is instituted in a court whose jurisdiction could not have been invoked except by trickery or fraud, the law will not sanction such a proceeding. Steiger v. Bonn (C. C.) 4 Fed. 17; Blair v. Turtle (C. C.) 5 Fed. 394.

But nothing of this nature is claimed by the defendant in this case; the plaintiffs did nothing except what the law authorizes them to

do, and instituted their action in a court of competent jurisdiction of the subject-matter, and, owing to the presence of the defendant there, of his person. What his motives for not instituting the action in the courts of Colorado are, as long as he does not resort to fraud or trickery, cannot be questioned, no more than when a suit is instituted in a national instead of a state court of the county where the defendant resides, although the latter would be more convenient. Dickerman v. Northern Trust Co., 176 U. S. 181, 190, 20 Sup. Ct. 311, 44 L. Ed. 423; Williamson v. Osenton, 232 U. S. 619, 34 Sup. Ct. 442, 58 L. Ed. 758; Hamilton, etc., Co. v. Parish, 67 Ohio St. 181, 189, 65 N. E. 1011, 60 L. R. A. 531; 1 Corpus Juris, 971.

The motion to quash is overruled, and defendant granted 60 days within which to file his answer.

---

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes