## BERLIN v. TRAVELERS INS. CO. OF HARTFORD, CONN.

### No. 6049.

District Court, D. Maryland.

Feb. 8, 1937.

Israel Gomborov and David Gomborov, both of Baltimore, Md., for plaintiff.

William L. Marbury, Jr. (of Marbury, Gosnell & Williams), of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff has moved to remand this case to the Court of Common Pleas of Baltimore City, where it was originally instituted and whence it was removed to this court on the petition of the defendant. The point is made that the jurisdiction of this court does not exist, because, the case being one of diverse citizenship, there is not the requisite amount of more than $3,000, exclusive of interest and costs, in controversy in the case.

It appears from the declaration that the plaintiff, as assignee, is suing on a combined life and disability policy of insurance issued by the defendant in the face amount of $5,000, on May 19, 1925 to Joseph N. Berlin as the insured. In addition to the contract of life insurance the policy contained a promise to pay the insured a monthly income of $50 in the event of total and permanent disability, upon due proof thereof, during the continuance of such disability, and also to waive premiums falling due during said period. It is alleged that the insured did become totally disabled within the meaning of the policy and thereupon the Company for a period of time waived the premiums and made the monthly payments to the plaintiff as assignee but that the defendant has failed to make payments of the monthly installments for five months accounting from the 15th day of June 1936, to and including the 15th day of October 1936, making a total of $250 due and payable at the time of the institution of the suit on October 30, 1936. And it is this latter sum only, with interest thereon, from October 28, 1936, for which the plaintiff sues.

Before the expiration of the time for pleading in the state court the defendant filed its petition for removal to this court showing the existence of diverse citizenship in that the plaintiff is a resident and citizen of the State of Maryland and the defendant is a Connecticut corporation; and further alleging "that the matter and amount in dispute in said suit, exclusive of interest and costs, exceeds the amount or value of $3,000," because, as it is alleged, the plaintiff's declaration does not show the real or true amount or value of the matter and amount in dispute in that "said petitioner by operation of law, requirement of the Insurance Department of Connecticut, and in accordance with sound actuarial principles and practice, would be required to set up a reserve in the event the plaintiff should prevail herein, and will be required to keep and maintain such reserve in excess of $3,000, which reserve, together with the more particular matters claimed by said plaintiff in said petition for removal, is the true amount in dispute in said cause."

It appears from statements of counsel at the hearing on the motion to remand

that the plaintiff opposed the removal in the state court and after hearing argument the Judge thereof was of the opinion that at least a prima facie case for removal had been made and therefore signed the usual order for removal, commenting at the time that the matter could be more fully heard and ruled on as a federal question in this court. Here the plaintiff has in due course moved to remand but has not traversed the allegation as to the requirement for reserve, resting the motion on the ground that it appears as a matter of law from the papers in the case that the amount in controversy does not exceed $3,000.

The right of removal is purely statutory in origin and for this case is dependent upon United States Code, title 28, § 71, 28 U.S.C.A. § 71 (Judicial Code, § 28, as amended), which provides that a case may be removed from the state to the federal court for the proper district provided it is one "of which the district courts of the United States are given jurisdiction." If such jurisdiction exists for this case it arises only out of United States Code, title 28, § 41 (1), 28 U.S.C.A. § 41 (1), which gives jurisdiction in cases of diverse citizenship *"where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000."*

As the plaintiff's declaration sets up a claim for nothing more than $250 and a small amount of interest thereon, it is at once apparent that there is not the requisite amount in controversy unless the latter is shown by the untraversed allegation in the petition for removal with regard to the requirement for a reserve to be set up by the defendant insurance company. In ordering the removal it further appears that the judge of the state court was influenced largely by the decision in the case of Enzor v. Jefferson Standard Life Ins. Co. (D.C.) 14 F.Supp. 677, 679, where it was held that a similar untraversed allegation with regard to the requisite reserve justified removal to the federal court. In the latter case the court cited and relied upon the following cases: Mutual Life Ins. Co. v. Thompson (D.C.) 27 F.(2d) 753; Jensen v. New York Life Ins. Co. (C.C.A. 8) 50 F.(2d) 512; Penn Mutual Life Ins. Co. v. Joseph (D.C.) 5 F.Supp. 1003, and Thorkelson v. Aetna Life Ins. Co. (D.C.) 9 F. Supp. 570. But it will be found on ex-

amination that in each of these cases, except the Joseph Case, the controversy involved the integrity of the whole of the policy, the face amount of which was more than $3,000 in each case. And in the *Joseph Case* the insurer was suing to cancel for fraud the total and permanent disability endorsements on three life policies where the annual benefits exceeded $1400 a year. It is true that in the last three of the four cases cited above there are expressions of the respective courts which tend to support the proposition that the requirement as to reserve is sufficient to establish jurisdiction as to the required amount in controversy; but it also appears that these expressions were given merely as additional reasons in support of the jurisdiction, the face amounts of the policy under attack as a whole being in each case more than $3,000 (with the exception of the Thorkelson Case—where only the disability clause was involved).

It seems to be now thoroughly well established by numerous federal decisions that where a suit challenges the validity *in toto* of a life insurance policy in face amount more than $3,000, the requisite amount' in controversy exists. The distinction between such a case and one where disability benefits for less than $3,000 is alone in issue, is clearly pointed out by Judge Parker for the Circuit Court of Appeals for this Circuit, in Bell v. Philadelphia Life Ins. Co., 78 F.(2d) 322, 323, as follows: "It is true, as contended by plaintiff, that the jurisdiction of the court depends upon the amount actually in controversy in the suit and not upon any amount indirectly involved because of the probative effect of the judgment rendered therein (New England Mortgage Co. v. Gay, 145 U.S. 123, 12 S.Ct. 815, 36 L.Ed. 646); but here the policy itself is directly in controversy and its value determines the value in suit. See Pacific Mut. Life Ins. Co. v. Parker (C.C.A. 4th) 71 F.(2d) 872, 874; Ginsburg v. Pacific Mut. Life Ins. Co. (C.C.A. 2d) 69 F. (2d) 97, 98."

In that case the plaintiff was suing for disability benefits in the amount of $600; and also prayed that the policy be declared by the court to be in full force and effect despite the insurer's action in converting the policy into one for extended term insurance only, because of the failure on plaintiff's part to pay a premium note when due.

· Shortly after the decision .in the last named case the Supreme Court in New ·York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971, denied federal jurisdiction in a case where the plaintiff having a life policy for $2,000 with disability benefits provided for, sued for damages claimed in the amount of $15,900 on the theory of anticipatory breach of the contract by the Insurance Company in an entry made on its books of a lapse of the policy upon failure to pay a premium when the insured claimed that he was entitled to disability benefits and a waiver of premium by virtue of a disability which the insurer refused to acknowledge as valid. The court held that in the circumstances the doctrine of anticipatory breach was not applicable, and that the real controversy was only over the amount of disability benefits due at the institution of the suit, which was less than $100.

█ On principle it seems quite impossible to spell out from the plaintiff's declaration in this case a controversy between the parties involving more than $3,000. Indeed this is admitted by the defendant which justifies the removal only on the allegation that it will be. required to establish a reserve of more than $3,000 if the plaintiff's suit is successful. As this averment is not traversed it is to be accepted as a possible consequence of the suit. But still there is no controversy between the parties as to this and if it does result from the suit it is merely incidental, consequential and collateral to the plaintiff's claim for only $250 which is the sole matter in actual controversy between the parties. The requirement for the reserve does not mean that the defendant will necessarily be required to pay out a sum in excess of $3,000 as that obviously depends upon the long continuance of the plaintiff's total disability which will not be established by the plaintiff's success in the present suit, which covers only a particular period of alleged total disability. That is to say, a judgment for the plaintiff in the present case will not necessarily be an estoppel against the defendant with respect to payments alleged to be due in the future. But even if this were the necessary result of this case, nevertheless that would not be sufficient to establish the jurisdiction because it is only a collateral or consequential or incidental result. Elgin v. Marshall, 106 U.

S. 578, 1 S.Ct. 484, 27 L.Ed. 249; Bruce v. Manchester, etc., R.·Co., 117 U.S. 514, 6 S.Ct. 849, 29 L.Ed. 990; New England Mortgage Security Co. v. Gay, 145 U.S. 123, 12 S.Ct. 815, 36 L.Ed. 646; Holt v. Indiana Mfg. Co., 176 U.S. 68, 72, 20 S. Ct. 272, 44 L.Ed. 374, and Wright v. Mutual Life Ins. Co. (C.C.A. 5) 19 F. (2d) 117, affirmed 276 U.S. 602, 48 S.Ct. 323, 72 L.Ed. 726.

Moreover, recent decisions of the Supreme Court show a very definite insistence that the limitation on jurisdiction as to the amount in controversy is to be strictly applied by the. federal courts. In Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 703, 78 L.Ed. 1248, Mr. Justice Stone, speaking for the Court, said: "The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution (Amendment 10), to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution (article 3). See Kline v. Burke Construction Co., 260 U.S. 226, 233, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined. See Matthews v. Rodgers, supra, 284 U.S. 521, at page 525, 52 S.Ct. 217, 76 L.Ed. 447; compare Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249." See, also, McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, and McNutt v. McHenry Chevrolet Co., Inc., 298 U.S. 190, 56 S.Ct. 785, 80 L.Ed. 1141, and New York Life Ins. Co. v. Viglas, supra.

Some difficulty has been encountered by the courts in the application of the statute to situations where the amount in controversy is unliquidated and quite uncertain by reason of the subject matter, as, for illustration, where the plaintiff is seeking by injunction defensive protection against threatened injury; and it has been said in some of the cases of that nature that "it is the value of the 'object of ·the suit' which determines the jurisdictional amount in the federal courts, Mississippi & Missouri R. Co. v. Ward, 2 Black, 485, 17 L.Ed. 311; Packard v. Banton, 264 U. S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596."

But as Mr. Justice Stone continues in Healy v. Ratta, supra, 292 U.S. 263, at page 268, 54 S.Ct. 700, 702, 78 L.Ed. 1248: "But this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings. The statute itself does not speak of objects of the suit. It confers jurisdiction only if 'the matter in controversy exceeds * * * the sum or value of $3,000.'" See, also, Rose Federal Jurisdiction and Procedure (4th Ed.) § 218.

The recent cases in the Supreme Court above cited have largely if not entirely dissipated the uncertainties as to the test of jurisdiction heretofore existing as a result of some of these injunction cases. But apart from this we are not concerned with any such difficulty in this comparatively simple case, which presents only an ordinary common law suit for the recovery of $250. Ordinarily in determining what is in controversy we look only to the plaintiff's statement of the case where it is clear and unambiguous [Equitable Life Assur. Society v. Wilson, 81 F.(2d) 657 (C.C.A. 9); Woods v. Massachusetts Protective Ass'n (D.C.) 34 F.(2d) 501; Brown v. House (D.C.) 20 F.(2d) 142; Harley v. Firemen's Fund Ins. Co. (D.C.) 245 F. 471] and it is only where the real amount in controversy does not appear therefrom that it can be shown for removal purposes in the defendant's petition. Banigan v. City of Worcester (C.C.) 30 F. 392; Order of Railroad Telegraphers v. Louisville & Nashville R. Co. (C.C.) 148 F. 437; Thorkelson v. Aetna Life Ins. Co. (D.C.) 9 F. Supp. 570, 571; Hughes on Federal Procedure (Vol. 4) p. 148. It is therefore at least very doubtful whether the averment as to the necessary reserve is a fact properly to be considered at all in this connection; but even if it is, it does not constitute in my opinion a sufficient basis for the removal of the case.

The purpose of the limitation as to the amount in controversy is entirely clear. The limitation was inserted in the original Judiciary Act of 1789 (1 Stat. 73, § 12 [28 U.S.C.A. § 71 note]) in the amount of $500 and has been thereafter increased to a sum exceeding $3,000 exclusive of interest and costs. Although Congress would have full power to make jurisdiction in diverse citizenship cases exclusive in the federal courts or concurrent to that of the state courts, without limitation as to amount, nevertheless it seems to have been the consistent policy to leave controversies in such cases, where the amount involved is comparatively small, for disposition exclusively in the state courts. And in ruling on jurisdictional questions it has very consistently been the policy of the federal courts not to expand their jurisdiction in doubtful cases because, as was pointed out by the Supreme Court in Ex parte McCardle, 7 Wall. 506, 515, 19 L.Ed. 264, it is just as important to decline ungranted jurisdiction as to firmly exercise it where it does exist.

I conclude therefore the motion to remand must prevail and have signed an order submitted by counsel to that effect.